UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VICTORIA PALMIERI,

       Plaintiff,

vs.

DEVON MANAGEMENT CORPORATION,
WARWICK PROPERTIES, INC., JONAH
MANDELBAUM,

       Defendants.
-------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

### I.   **INTRODUCTION**

1. By and through her counsel, Watkins Law, Plaintiff, Victoria Palmieri, brings this action against Defendants, for violation of her rights under the Fair Housing Act, Title VIII of the Civil Rights act of 1968, 42 U.S.C. §§ 3601 et seq., and the Rehabilitation Act, 29 U.S.C. §§ 701, et seq.., as well as under New York State law.

### II.   **PARTIES**

2. Until on or about January 31, 2018, Plaintiff, Victoria Palmieri, resided at Liberty Green Senior Apartments in Warwick, New York.

3. Defendant Devon Management Corporation is a for-profit New York State corporation which manages the Liberty Green Senior Apartments in Warwick, New York. It may sue and be sued.

4. Warwick Properties, Inc. is a for-profit New York State corporation which owns Liberty Green Senior Apartments in Warwick, New York. It may sue and be sued.

5. Jonah Mandelbaum, on information and belief, is the sole owner of Warwick Properties, Inc. and Devon Management Corporation, and Chief Executive Officer of both entities. He may sue

and be sued.

### III.  JURISDICTION & VENUE

6.  As Plaintiff brings this action to enforce her rights under the Fair Housing Act and Rehabilitation Act, this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331, 1343(a) (3) and (4), and 29 U.S.C. § 1132.

7. As Plaintiff's state law claims arise from the same nucleus of operative facts as her federal claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. As the underlying events giving rise to this action occurred in Warwick, which is located in Orange County, New York, venue is proper in this Court.

### IV.  FACTUAL AVERMENTS

9. Plaintiff Victoria Palmieri is 59 years-old and suffers from Multiple Chemical Sensitivity (MCS) caused by pesticide exposure, and has a medically documented severe allergy to pesticides.

10. In January 2016, Plaintiff and her husband moved into a one-bedroom apartment in Liberty Green Senior Apartments ("1 Liberty Green"), which is a federally funded housing complex for seniors (individuals over 55 years old) located in Warwick, New York.

11. Prior to moving in to Liberty Green, Plaintiff informed Liberty Green's property manager, Cheryl Lennon, that she is severely allergic to pesticides.

12. In or about December 2016, Defendants determined that one or more of its units on the third floor of 1 Liberty Green was infested with bedbugs.

13. For the next several months, through January 2018, Defendants, through their agent, Ehrlich Pest Control, sprayed toxic pesticides (Temprid SC) throughout several units of 1 Liberty Green and in common areas, including the hallways, TV rooms, and laundry rooms.

14. Through direct observation and information gathering, Plaintiff believes that Ehrlich sprayed Temprid pesticides within 1 Liberty Green more than forty times through January 2018.

15. Temprid SC is an odorless poison and remains active for at least 90 days after application, and it is dangerous if absorbed through the eyes, lungs or skin.

16. Repeated exposure to Temprid can cause sickness in otherwise healthy individuals and is particularly harmful to someone like Plaintiff who has Multiple Chemical Sensitivity.

17. Several 1 Liberty Green residents became sick as a result of Devon Management's overspraying of Temprid SC, including with headaches, nausea, burning eyes, vomiting, dizziness, mental confusion, coughing, scratchy throat, and difficulty breathing.

18. In December 2017, Plaintiff developed asthma due to the overspraying of pesticides at Liberty Green.

19. New residents who moved into 1 Liberty Green in 2017 were apparently not warned that the building had bedbugs, despite New York State law requiring residential landlords to provide such a warning to prospective residents.

20. In addition, Defendant failed to give residents prior notice when its agent, Ehrlich, sprayed in common areas at 1 Liberty Green.

21. Despite Defendants' repeated spraying of Temprid SC throughout 2017 and January 2018, the bedbug infestation in 1 Liberty Green persisted.

22. In May 2017, Plaintiff wrote a letter to defendant Mandelbaum, advising him of the fact that she had previously been made severely ill, and had to be hospitalized, due to chemical exposure to bedbug pesticides at a former residence.

23. Plaintiff urged Mandelbaum to use a more effective and non-dangerous heat treatment

for the Liberty Green bedbug problem, as pesticides merely lead bedbugs to migrate from one apartment or area to the next, and they develop resistance to pesticides, and warned that repeated pesticide spraying would be dangerous for both residents and their pets.

24. Mandelbaum never responded to Plaintiff's letter and thereafter Defendants continued to repeatedly, and unsuccessfully, spray pesticides to eradicate the Liberty Green bedbug infestation.

25. In early January 2018, Plaintiff prepared a Petition which urged Defendants to stop spraying pesticides to combat the bedbug problem and to use a heat treatment instead.

26. The petition noted that: (i) spraying pesticides for nearly a year had not worked; (ii) bedbugs are known to be resistant to pesticides and can hide in places that pesticides cannot reach, such as under carpeting; (iii) Liberty Green housed many residents with serious health conditions, and several, including Plaintiff, had been sickened by the repeated pesticide spraying; (iv) several landlords have ultimately had to use a heat treatment after unsuccessfully spraying; and (v) preparing for spraying was too arduous for many elderly and sick Liberty Green residents.

27. Forty-seven out of eighty-seven residents at 1 Liberty Green, many of whom had been harmed by the repeated pesticide spraying, signed the petition which Plaintiff had prepared.

28. After collecting these signature, Plaintiff and another resident met with Property Manager Cheryl Lennon and Devon Management's Chief Operating Officer, Paul Gratzel, to present the petition and to discuss Plaintiff's concerns.

29. During this meeting, Plaintiff once again advised that she has Multiple Chemical Sensitivity, is severely allergic to pesticides, and that the insecticide spraying at 1 Liberty Green had made her and other residents sick.

30. Plaintiff has medical documentation that she is severely allergic to pesticides and that

she should not be exposed to pesticides.

31. In response to Plaintiff's petition and her stated concerns, Gratzel responded that, "anyone who doesn't like spraying can leave." He further stated that Defendant would not use a heat treatment rather than pesticides because "it costs too much."

32. On January 25, 2018, within days of this meeting, Defendants gave Plaintiff and her husband notice that their apartment would be treated with pesticides on January 30, 2018.

33. On that same day, Lennon tore down a sign which Plaintiff had posted on her apartment door which read: "Severe pesticide allergy. Do not Treat. Have letter from doctor."

34. On that same day, January 25, 2018, Defendants gave Plaintiff a notice that unless she allowed management in her apartment to apply pesticides on January 30, 2018, they would terminate her tenancy.

35. Because Defendants utterly failed to reasonably accommodate Plaintiff, and instead took retaliatory action against her, she sought alternative housing for her and her husband.

36. Plaintiff was able to find a new apartment in Warwick but at more than 50% higher monthly rent than the government-subsidized housing at 1 Liberty Green.

37. Defendants' repeated spraying of pesticides at 1 Liberty Green throughout 2017 and early 2018 was unreasonable and caused Plaintiff to suffer physical sickness.

38. Defendants' failure to reasonably accommodate Plaintiff forced her to move to alternative housing and to suffer economic loss as a result.

39. Defendants retaliated against Plaintiff in response to her protected expression under the Fair Housing Act and the Rehabilitation Act.

40. Defendants' acts and omissions have caused Plaintiff to suffer physical sickness and pain

and suffering, emotional distress, and economic hardship.

41. Defendants acted maliciously and/or in reckless disregard of Plaintiff's federally protected rights.

42. Defendants have received millions of dollars from the federal government in connection with their ownership and management of Liberty Green.

## V.   CAUSES OF ACTION

43. Plaintiff incorporates paragraphs 1-42 as if fully re-written herein.

44. By dint of the foregoing, Defendants violated Plaintiff's rights under the Fair Housing Act, 42 U.S.C. §§ 3601 et seq., and Rehabilitation Act, 29 U.S.C. §§ 701, et seq.

45. By dint of the foregoing, Defendant violated Plaintiff's rights under the New York State Human Rights Law, N.Y. Executive Law § 296(2-a)(d)(1), (18)(2).

46. By dint of the foregoing, Defendants were negligent in failing to act reasonably with respect to their use of pesticides at Liberty Green, and such negligence caused Plaintiff to suffer injuries.

## VI.   PRAYER FOR RELIEF

47. WHEREFORE, Plaintiff prays that this Honorable Court:

(a) empanel a jury to hear and decide this matter;

(b) award to Plaintiff compensatory damages, including damages for past and future physical sickness, past and future physical pain and suffering, past and future emotional distress, and past and future economic loss;

(c) award to Plaintiff punitive damages under the Fair Housing Act;

(d) award to Plaintiff her reasonable attorneys' fees and costs;

(e) enter any other relief justified by the law and facts.

Dated: New Paltz, NY
       March 12, 2018

Respectfully submitted,

_____
Christopher D. Watkins (CW 2240)
WATKINS LAW
5 Paradies Lane
New Paltz, NY 12561
(845) 419-2250
*Attorneys for Plaintiff*